Smith *v.* Hall & al.

## Smith *vs.* Hall & *al.*

An action of *assumpsit for use and occupation* was referred — " the referees to decide *according to law.*" It was in evidence before them that the plaintiff was the owner of certain mills, which he rented to one *Maguire* for the term of one year, from the 6th of *July*, 1826, " and such further time as should be agreeable to the parties." On the 15th of *May*, 1827, the lessee of the plaintiff gave the defendants a lease of the premises for one year — a portion of the rent to be paid at the end of six months, " after deducting all sums said (lessees) may or have paid *for the repairs on said mills.*" On the 20th of *September*, the lessee of the plaintiff transferred all his interest in the lease of the defendants to one E. T. and the latter on the same day drew an order on the defendants in favor of the plaintiffs, for the payment of " all sums of money that may or have become due for rent of the mills, &c. *according to the tenor of the lease.*" The referees in their award deducted a large amount from the plaintiff's claim on account of *repairs made by defendants* — and it was held that in so doing they had *violated no principle of law.*

In several other particulars also, the Court sustained the report of the referees on the ground that the questions decided were *questions of fact.*

This action was assumpsit for the *use and occupation* of certain mills at *Wiscasset*, owned by the plaintiff, and was referred.

The terms of the submission were to decide the cause *according to law.* Prior to the submission the defendants had tendered and paid into Court the sum of $134.

The referees made a special report in favor of the defendants and referred to certain papers from which the following facts may be gathered.

*Joseph E. Smith,* the plaintiff, on the 6th day of *July,* 1826, being the owner of a farm in *Wiscasset,* called *Birch Point,* on which were situated certain saw mills, on that day leased it to *John Maguire* to hold for the term of one year, and such further time as should be agreeable to the parties. On the 15th day of *May,* 1827, *Maguire* leased the mills and certain privileges to the defendants for one year, for a price depending upon the amount of lumber sawed. By the terms of the lease *Maguire* was to do certain specified repairs, and whatever else was necessary to make the mills rentable. Six months from the date of the lease a payment of rent was to be made, " after deducting all sums said *Hall & Boyd* may have paid for the repairs on said mills."

On the 20th of *September,* 1827, *Maguire* transferred all his interest in the lease to *Edward Tufts,* who on the same day drew an order on the defendants in favor of *Smith,* the plaintiff, requesting them to pay the latter " all sums of money that may or have become due for rent of the mills at Birch Point, according to the tenor of the lease." This was accepted by the defendants and passed over to the plaintiff.

*May* 24, 1828, the defendants addressed the following letter to the plaintiff. " Our lease for Birch Point mills expires on the 28th instant. We wish you would inform us by letter whether we can have them long enough to finish our logs on the terms that we have had them the year past." " We do not know yet how much there will be due for the year past, but will let you know as soon as we can ascertain, and shall want you to wait for the pay till we can sell our lumber, with paying you interest for what we may be indebted." — " We want you to write that we may show *Mr. Maguire* our authority for keeping them, that we may not be troubled with him any longer."

*June* 2*d,* 1828, the plaintiff answered the defendants' letters as follows, *viz;* " Your favors of the 27*th* and 31*st* ultimo are

received and I should have answered the first of them, but hardly knew what to say to you. The fact is, *Mr. Maguire* has a lease of the whole of *Birch Point,* including the mills, which lease it is true may now be terminated at the pleasure of the parties — and yet I have no desire to terminate it as to part of the estate, without at the same time determining the lease as to the whole of the estate — and should I terminate the lease as to part, I know not how the rent could be apportioned, and I am satisfied that without an action, or my personal presence, *Mr. M.* would not give up the whole estate and quit the house, which I might wish him to do. I will however say, that I have now the same mind upon the subject which I lately expressed to *Mr. Hall* in *Boston.* It is perfectly agreeable to me that you should hold the mills for another year upon the same terms as during the last year — and hope you will be able so to do by consent of *Mr. M.,* to whom I shall write by same mail with this, to induce him to consent and give you less trouble for the future. You will, however, understand that no more repairs are to be made without the consent in writing of my agent and attorney, my brother *Samuel,* to whom you will please to apply in case repairs should be necessary — and I have already given him instructions upon the subject — I hope you will get along in this way with satisfaction to yourselves and *Mr. M.* for a few months, and until I visit *Maine,* which I propose to do in all *August* next, at farthest," &c.

The referees, after reporting generally in favor of the defendants that the plaintiff had no cause of action, and that the defendants recover their cost, add the following, viz: "We have made the above award on the ground that in and by the terms of the original lease from *Maguire* to the defendants, the mills were to be in good repair at the time possession was taken by the defendants, and the whole evidence in the case proves that at the time of the commencement of said possession by the defendants, said mills were not in rentable repair; and that it would have cost from $800 to $1000 to have put them in such repair. It further appears, that during the existence of said lease and possession by the defendants, that sundry orders were drawn by said *Maguire* on said *Hall,* the acting tenant, for pay for sundry sums

expended in repairs on said mills, which sums were paid by the defendants — and we have allowed for said repairs, deducting what would have been the ordinary repairs in case said mills had been put in tenantable repair at the time defendants took them into possession. There being no evidence of any possession in the plaintiff, actually taken, during the tenancy of the defendants, we have considered that all acts of *Maguire*, the lessor, during all of the term defendants occupied, were binding on the plaintiff in this action — and have allowed all of said repairs thus made by said *Maguire* and paid for by said tenants, and the repairs made by them by order of said *Maguire*. And we have made this report on the ground, that the plaintiff was at no time, during said lease and occupancy by the defendants, in the actual possession of the premises. We further make the original lease from *Maguire* to the defendants, and the lease from the plaintiff to *Maguire*, the original deeds of mortgage to said *Smith* — the order of *Tuffts* on the defendants — and letters from *Hall* and *Boyd* to the plaintiff, and from *Hall* to *Maguire*, a part of this case, that the Court may determine whether we have given a true legal construction to the transaction between the parties," &c.

> *Josiah W. Mitchell,*
> *Horace Rawson,*  ⎫ *Referees.*
> *Llewellyn Lithgow,* ⎭

The referees, on being called, confirmed these facts — and added that there was evidence before them that *Maguire* had committed *waste* before leasing to the defendants, by cutting down and selling some fir trees.

Upon these facts the question was upon the acceptance of the report of the referees.

*Smith, pro se*, objected to the acceptance of the report. The referees being bound to decide according to law, should have been bound by legal principles in the admission of testimony. They erred in receiving *parol* evidence to establish an agreement in regard to the rent, when the terms of the agreement in this respect were incorporated into the lease. By that instrument the repairs were to be made by the defendants principally — and what were not to be made by them, were to be made by *Maguire, before the commencement of the term* — and the defend-

Smith *v.* Hall & al.

ants' taking possession was an admission that all the repairs had been made, that were agreed to be made. *Mumford* v. *Brown,* 6 *Cowen,* 478; *Fowler & al.* v. *Bott & al.* 6 *Mass.* 63.

The referees also erred in saying that there was no evidence of any entry by the plaintiff during the occupancy of the defendants. The facts reported by them show the contrary. The application of the defendants to the plaintiff by their letter — the answer of the defendant, giving him permission to occupy — the showing of the authority to *Maguire,* and declining to have any thing to do with him — all went in law to show an entry of the plaintiff — to which may also be added the fact of the forfeiture of the lease by *Maguire,* by not paying rent — by committing waste — by giving a lease extending beyond his own term — and by not repairing. It was at the election of the plaintiff to consider the lease of *Maguire* at an end, and the defendants his tenants — and he did so elect. It was not necessary for him to give *Maguire* any notice to quit. 2 *Pick.* 70, 71; 2 *Strange,* 1128; *Co. Lit.* 214, *B*; 2 *Cowen,* 133.

The referees not only erroneously found that the plaintiff had never been in possession, but they erred still more in saying that *Maguire* was, and that he was the agent of the plaintiff, and had full power to make an agreement with the defendants in relation to making repairs. Would the plaintiff have been at the pains to procure the order drawn on the defendants, and to obtain the assent of *Maguire,* if he, *Maguire,* was to have the power to destroy the whole arrangement with a breath? There is nothing in the case shewing this pretended authority of *Maguire.*

But if the plaintiff was bound to repair, the defendants have no right to do it and charge him therefor — at best, they can only have an action on the covenants — if the claim be good, the breach of covenant by one party cannot be a set-off to a breach by the other party.

*Fessenden* and *Barnard,* cited the following authorities on the part of the defendants. *Cogswell* v. *Brown,* 1 *Mason,* 237; *Gerrish* v. *Bearce & al.* 11 *Mass.* 193; *Bigelow & al.* v. *Newell,* 10 *Pick.* 343; 4 *Esp. R.* 59; *Peake's Ev.* 241; *Allen* v.

Smith *v.* Hall & al.

*Thayer,* 17 *Mass.* 299; *Codman & al.* v. *Jenkins,* 14 *Mass.* 93; *Binney* v. *Chapman,* 5 *Pick.* 124; *Rising & al.* v. *Stannard,* 17 *Mass.* 287.

MELLEN C. J. — The question is whether the report of the Referees shall be accepted. By the terms of the submission they were to decide the cause *according to law.* The objection of the plaintiff is that they have not so decided. As to all questions of *fact* they are the exclusive judges, acting as it is admitted they have acted, with integrity and fairness. — They have reported that the plaintiff has no claim on the defendants beyond the sum of $134 which they tendered and deposited in Court. It appears that the plaintiff is owner of the farm and saw mills in question in *Wiscasset:* that on the 6*th* of *July,* 1826, he leased the same to *Maguire* for the term of one year from the *first day* of said *July,* and so much longer time as should be agreeable to the parties. It further appears by a letter, referred to by the referees, from the plaintiff to the defendants, bearing date *June* 2*d,* 1828, that the lease was then in existence and the relation of landlord and tenant was then subsisting, nor is there any evidence before the Court shewing that it has ever been determined; on the contrary the referees have certified that there was no evidence before them that the plaintiff, during the tenancy of the defendants, ever took any possession of the premises; this fact is perfectly consistent with the continued existence of the lease to *Maguire.* The lease from *Maguire* to the defendants bears date *May* 15, 1827. This is a lease of the mills and privileges, on the abovementioned farm, but not of the farm, for one year. The case presents no evidence of any express lease from the plaintiff to the defendants of the mills, in *writing* or by *parol:* If the relation of landlord and tenant did not subsist between the plaintiff and defendants during their occupation of the mill, how then could this action be maintained for any thing more than the amount due on the order of *Tufts* upon the defendants and accepted by them; and that amount has been settled by the referees, upon the terms of the lease from *Maguire* to the defendants, which is specially referred to in the order, to be less than was tendered on account of that order. On *this point* we would refer to the plaintiff's letter of *June* 2*d,*

Smith *v.* Hall & al.

1828, which is hereafter mentioned, and from which certain extracts are made for *another* purpose. Does not this letter show a continuing right in *Maguire:* and does any thing, show a possession or right of possession in the plaintiff? If these facts are correct, as they seem to be, on what ground could the referees have consistently reported any sum beyond that which has been tendered ?

But the referees seem to have placed their decision on another ground or view of their own and a different process of reasoning. To this we now direct our attention. They state in their summary of reasons that they *considered* that all the acts of *Maguire,* the lessor, during all of the term the defendants occupied, were binding on the plaintiff in this action. If this opinion was the result of evidence before them, clearly it is not subject to our revision or control. That evidence might be direct or circumstantial; express or implied. On this point no questions were proposed to either of the referees, though they were all examined as witnesses at the hearing of the objections. But we will look at the facts. We have already alluded to a letter from the plaintiff to the defendants, dated *June 2d,* 1828, in which he speaks of his lease to *Maguire* as then continuing in force. That letter was written in answer to two letters from the defendants to him. The first is dated *May* 24, 1828, in which they stated that their lease of the mills would expire on the 28th of that month, and inquired whether they can have them long enough to finish their logs on the terms on which they had them the year past ; and observe that they do not know how much would be due *him for the past year:* they add, that they wished him to write that they might show *Maguire* their authority for keeping the mill. The second letter is dated *May* 31, 1828, and expresses nearly the same ideas and wishes as the other. On the 2d of *June* the letter in answer was written by the plaintiff to the defendants. In this letter he says, among other hings, " *Maguire* has a lease of the whole of *Birch Point,* including the mills, which lease, it is true, may be terminated now at the pleasure of the parties, and yet I have no desire to terminate it as to *part* of the estate, without at the same time terminating the lease as to the whole. It is perfectly agreeable to me that you should hold the mills for *another* year upon

the *same terms as during the last year;* and hope you will be able so to do by consent of *Mr. Maguire,* to whom I shall write to induce him to consent and give you less trouble for the future." Now, according to these letters, in what character was *Maguire* acting during the year 1827, and at the time those letters were written ? Was he acting in *his own right* as the lessee of the plaintiff, and thus entitled to the rents from the defendants; or was he acting as the *agent of the plaintiff,* as supposed and considered by the referees to have been the case ? If he was acting in *his own right* and for his own benefit, we have before expressed our opinion what would be the legal result. Is there not evidence that he acted as agent, though not *in form* yet in substance and reality ? The lease was for *one year* from *May* 15, 1827, and yet the defendants in their letter of *May* 24, 1828, addressed to the plaintiff, say, "We do not know how much will be due *you* for the *past year:*" they also inquire whether they can have the mills on the *same terms* as the *last year.* Why were these remarks and inquiries made of the plaintiff, if he was not interested ? At any rate, the conclusion to which the referees were conducted in their inquiries was not the decision of any *question of law.* On either view of the cause, how can the Court say that the referees have decided contrary to legal principles ? There is no proof that any parol evidence was offered to contradict, control or vary the language of either of the leases. It has been urged that the voluntary entry of the defendants and their taking possession on the 28*th* of *May,* 1827, was conclusive evidence that the stipulated repairs which were to be made, had been made, and that the defendants are estopped to deny the fact. How are they estopped ? It does not appear that they knew of the deficiences until *after* they had taken possession; and then the repairs were made by and under the direction of *Maguire,* at the expense of the defendants; and the plaintiff's property was rendered more valuable in consequence. Proceeding on the ground that, according to the facts as found by the referees, the plaintiff was bound to pay for the repairs, the objection of the plaintiff, that compensation should be recovered in an action on the covenants in the lease, does not apply : for the defendants have no covenants of the plaintiff to which they can re-

sort.   If in either of the views we have taken of the cause, the conclusion at which the referees arrived is a correct one, justice has been done and the report ought to be accepted.

But it has been urged further, that a tenant has no right to charge the landlord with any repairs, without a previous agreement to that effect.   But is there not an implied assent to this on the part of the plaintiff?   On the 20*th* of *September*, 1827, *Edward Tufts*, the assignee of *Maguire*, drew his order on the defendants, requesting them to pay the plaintiff " all sums of money that *may* or *have* become due for rent of the mills at *Birch Point* in this town situated, *according to the tenor of the lease*, and his receipt shall be your discharge."   This order was presented by *Smith* and accepted by the defendants.   *Maguire* assented to the drawing and acceptance of this order.   The order, by refering to the *tenor of the lease*, which contains particular provisions as to the repairs of the mills, may be considered as an order for the *balance* due, and being received by the plaintiff, is an implied assent to the *deduction* of the repairs.   As to the amount of rents and repairs, we have nothing to do with them ; it was the undisputed province of the referees to ascertain and decide both, and this they have done.   On the whole, we cannot say that the referees have violated any principle of law in the decision of the cause ; they have drawn their own conclusions from the evidence before them, as they had an undisputed right to do ; and the parties must acquiesce in the result.

*Report accepted.*